IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT COWAN and
STACY MONHEIT,

       **Plaintiffs,**

v.                                                                            No. CIV 09-0483 RB/LFG

FRANK & NANCILEE D'ANGELICO,
PASCO D'ANGELICO, D'ANGELICO
BUILDERS, JOSEPH D'ANGELICO,
BOB BURBIC, SANTA FE REALTY
PARTNERS, STEVE PATTELENA,
PROFESSIONAL INSPECTIONS AND
EVALUATIONS, INC., LAURA
LICHTENSTEIN, AND BARKER REALTY, INC.,

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on Defendants Professional Inspections and Evaluations, Inc. ("PIE") and Steve Pattelena's Motion for Summary Judgment (Doc. 89), filed on January 25, 2010. Jurisdiction arises under 28 U.S.C. §1332. Having considered the submissions and arguments of counsel, relevant law, and being otherwise fully advised, I find that this motion should be granted.

**I.    Background.**

Plaintiffs are residents of New Jersey who hoped to retire in New Mexico. (Doc. 54.) In late 2007, Plaintiffs purchased a house and lot, located in Lamy, New Mexico, from Defendants Frank and Nancilee D'Angelico ("D'Angelico Sellers") for $485,000. (*Id*.)

Defendants Joseph D'Angelico, Pasco D'Angelico, and D'Angelico Builders (collectively "D'Angelico Builder Defendants") had constructed the house for the D'Angelico Sellers. (*Id*.) Pasco D'Angelico is the father of Frank D'Angelico and Joseph D'Angelico. (*Id*.)

In the First Amended Complaint, Plaintiffs allege that the house was not built to code and has

many major defects, including a defective foundation, walls that are not plumb, improperly sheet rocked walls, missing plywood, incorrectly installed windows, and improperly grounded wiring. (Doc. 54.)  The house was not built according to the plans and specifications submitted for permitting.  (*Id*.)  A fire occurred at the house before it was placed on the market.  (*Id*.)  In the Fall of 2006, D'Angelico Builders hired Hands Engineering, LLC, and Croker, LTD, to provide testing and a plan for repair of the foundation.  (*Id*.)  However, none of the D'Angelico Builder Defendants had the foundation repaired.  (*Id*.)

The D'Angelico Sellers offered the home for sale, despite their knowledge of the problems with the home.  (Doc. 54.)  The D'Angelico Sellers hired Defendants Bob Burbic and Santa Fe Realty Partners ("Burbic Defendants") to sell the property.  (*Id*.)

Plaintiffs entered into negotiations for the purchase of the property and executed a purchase agreement on November 1, 2007.  (Pl. Ex. A, Doc. 1-2.)   Plaintiffs hired Defendants Laura Lichtenstein and Barker Realty, Inc. as their agent.  (Doc. 54.)  During negotiations leading up to the sale, the D'Angelico Sellers represented to Plaintiffs that the house was structurally sound and they revealed none of the many known defects.  (*Id*.)  The D'Angelico Sellers presented Plaintiffs with a Real Estate Transfer Disclosure Statement.  (Pl. Ex. B, Doc. 1-3.)

Plaintiffs hired Defendants Steve Pattelena and PIE ("PIE Defendants"), to inspect the home for potential problems.  (Doc. 54.)  On November 8, 2007, the PIE Defendants performed the inspection and issued a report and home warranty.  (*Id*.)  The report did not mention many of the defects associated with the house.  (*Id*.)  Plaintiffs hired the PIE Defendants to perform a second inspection to verify that the D'Angelico Sellers had made the corrections identified in the first home inspection report.  (*Id*.)  The PIE Defendants affirmatively stated to Plaintiffs that the house had no structural deficiencies.  (*Id*.) The representation by the PIE Defendants that Mr. Pattelena had a degree

from Cornell University induced Plaintiffs to hire the PIE Defendants. (*Id.*) Based on such representation, Plaintiffs believed that the PIE Defendants were exceedingly qualified to perform the home inspections. (*Id.*)

After they purchased the home, Plaintiffs noticed that the ground had shifted permanently, damaging the foundation and the house. (Doc. 54.) The floors, walls, paneling, cabinets, and certain electric wiring and fixtures in the house were negatively affected. (*Id.*) The reasonable cost of repairing the defects amounts to a sum greater than the value of the property. (*Id.*)

In the First Amended Complaint, Plaintiffs assert the following claims (I) breach of the implied warranty of habitability against the D'Angelico Sellers and the D'Angelico Builder Defendants, (II) breach of the implied warranty of use reasonable skill and perform in a workmanlike manner against the D'Angelico Builder Defendants, (III) breach of express warranty against the D'Angelico Sellers, (IV) breach of contract against the D'Angelico Sellers, (V) unjust enrichment against the D'Angelico Sellers, (VI) breach of contract against Laura Lichtenstein and Barker Realty, (VII) negligence against the D'Angelico Builder Defendants, (VIII) negligence against the PIE Defendants, (IX) negligence against Laura Lichtenstein and Barker Realty, (X) fraud against the D'Angelico Sellers and the D'Angelico Builder Defendants, (XI) fraud against the Burbic Defendants, (XII) negligence against the Burbic Defendants, (XIII) intentional misrepresentation against the D'Angelico Sellers, (XIV) intentional misrepresentation against the Burbic Defendants, (XV) breach of the implied covenant of good faith and fair dealing against the D'Angelico Sellers, and (XVI) civil conspiracy to commit fraud against the D'Angelico Sellers, Bob Burbic, and Santa Fe Realty Partners. (Doc. 54.) Plaintiffs seek rescission, compensatory damages, special damages, punitive damages, prejudgment interest, attorneys' fees, and costs. (*Id.*)

Plaintiffs' claims against Laura Lichtenstein and Barker Realty, Inc. (Count VI and Count IX)

3

were dismissed by stipulation on February 25, 2010.  (Doc. 116.)  Plaintiffs' claims against Bob

Burbic and Santa Fe Realty Partners (Count XI, Count XII, Count XIV, and Count XVI) were

dismissed by stipulation on March 8, 2010.  (Doc. 128.)  The D'Angelico Builder Defendants' motion

to dismiss, as to Count I, Count II, and Count X, was granted on March 25, 2010.  (Doc. 136.)

   The PIE Defendants move for summary judgment with respect to the negligence claim against

them (Count VIII), the only claim asserted against them.  As grounds for the motion, the PIE

Defendants assert that (1) the Preinspection Agreement (hereinafter "Contract") imposed a one-year

time limit for filing claims, which expired six months before Plaintiffs filed suit; and (2) the Contract

limited the PIE Defendants' liability to a refund of the fee paid for the home inspection and report.

## II.    Standard.

   Summary judgment may be granted only when "there is no genuine issue as to any material

fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law.' "  *Martinez*

*v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)).  When applying this

standard, the court examines the record and makes all reasonable inferences in the light most favorable

to the non-moving party.  *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1142 (10th Cir. 2009).

   The moving party bears "both the initial burden of production on a motion for summary

judgment and the burden of establishing that summary judgment is appropriate as a matter of law."

*Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2003).  If this burden is met,

the nonmovant cannot rest on the pleadings, but must set forth specific facts by reference to affidavits,

deposition transcripts, or other exhibits to support the claim.  *Serna v. Colo. Dep't of Corr.*, 455 F.3d

1146, 1151 (10th Cir. 2006) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (noting that, on summary judgment, the plaintiff can "no longer rest on the pleadings")).

The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323(1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the non-moving party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Although "[t]he burden of showing the absence of a genuine issue of material fact . . . is upon the movant," *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005), the nonmovant " 'must do more than simply show that there is some metaphysical doubt as to the material facts.' " *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

"Summary judgment is appropriate unless the nonmoving party makes a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1084 (10th Cir. 2006) (internal quotations omitted). Evidence relied upon in opposition to summary judgment "may be insufficient to create a triable fact if it is nonspecific or otherwise non-responsive, vague, conclusory, or self-serving." *Piercy v. Maketa*, 480 F.3d 1192, 1197-98 (10th Cir. 2007). The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

**III.    Statement of Facts.**

On summary judgment, the Court must view the facts in a light most favorable to Plaintiffs, the non-moving parties. *See Turner*, 563 F.3d at 1142. Thus, reasonable inferences are drawn and

factual ambiguities are resolved in Plaintiffs' favor.

Prior to purchasing the home, Plaintiffs hired PIE to inspect it.  (Def. Ex. A, Contract.)  The invoice for the "property condition analysis report and short term radon test with continuous monitor" is dated November 6, 2007.  (Pl. Ex. 2.)  The PIE Defendants billed Plaintiffs $724.63, "plus sales tax" for these services.  (*Id.*)

On November 7, 2007, PIE emailed Plaintiffs a "Preinspection Agreement E-Mail" and the Contract.  (Def. Ex. B, Email to Plaintiffs from PIE of Nov. 7, 2007.)  The Preinspection Agreement E-Mail stated that the inspection would take place on November 8, 2007, and invited Plaintiffs to call the PIE Defendants if Plaintiffs had any questions about the Contract or the inspection report.  (Def. Ex. B.)  The contract is two pages long.  (Def. Ex. A.)

On November 7, 2007, Mr. Cowan signed and dated the Contract on behalf of Plaintiffs.  (Def. Ex. A.)  On November 8, 2007, Mr. Pattelena executed the Contract.  (*Id.*)  Mr. Pattelena inspected the property on behalf of PIE on November 8, 2007.  (Def. Ex. A; Def. Ex. B; Pl. Ex. 1.)

The Contract states, in pertinent part: "Time to File: Any claim by client against PIE shall be instituted within one year from the date of the inspection or be forever barred.  This provision shall supercede any otherwise applicable statute of limitations."  (Def. A ¶ 17.)

Additionally, Contract provides: "Limit of Liability: It is understood and agreed between the parties that the limit of liability for errors or om[i]ssions in the inspection report is limited and fixed to a refund of the fee paid for the inspection and the inspection report."  (Def. A ¶ 14.)  According to the Contract, Plaintiffs agreed to pay $724.62, including "gross receipts tax," for the inspection and inspection report.  (Def. A ¶ 4.)  There is no explanation in the record for the one-cent disparity between the amounts stated in the Contract and the November 6, 2007 invoice and the reference to sales tax, rather than gross receipts tax, in the invoice.  (*Compare* Def. Ex. A *with* Pl. Ex. 2.)

Construing the record in the light most favorable to Plaintiffs, the Court finds the higher amount, or $724.63, was the actual amount paid by Plaintiffs.

Notably, the Contract states: "General Terms: It is understood that this is a binding and legal contract.  All agreements between the client and PIE have been incorporated in this contract which has been read and agreed to by the client and PIE."  (Def. A second ¶15.)  No other written agreement exists between Plaintiffs and the PIE Defendants that expands the scope of inspection beyond the terms in the Contract.  (Def. Ex. C, Response to Request for Admission No. 8.)

Plaintiffs lived out-of-state during the relevant period and they relied heavily upon the inspections and report of the PIE Defendants.  (Pl. Ex. 3 ¶ 3, Affidavit of Robert Cowan.)  Plaintiffs "based their reliance on Mr. Pattelena's representation that he had an engineering degree from Cornell University, leading [them] to believe he was exceedingly qualified to perform this home inspection." (Pl. Ex. 3 ¶5.)

No negotiations were held with regard to the contract.  (Pl. Ex. 3 ¶7.)  Mr. Cowan did not understand that the Contract limited Plaintiffs' right to sue to one year and limited their right to sue for negligence or claims outside of contract.  (*Id*.)

IV.     **Discussion.**

        A.      **New Mexico substantive law applies in this diversity action.**

The Court deems it appropriate to discuss the issue of choice of law *sua sponte*.  In cases arising under diversity jurisdiction, the federal court applies the substantive law of the forum state, including its choice of law rules, *see Vitkus v. Beatrice Co.*, 127 F.3d 936, 941 (10th Cir. 1997), and applies federal procedural law to the question of whether summary judgment is appropriate.  *See Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1175 (10th Cir. 2008).

In applying the state substantive law, the federal court's task is not to reach its own judgment

regarding the substance of the common law, but simply to " 'ascertain and apply the state law.' "
*Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003) (quoting *Huddleston v. Dwyer*,
322 U.S. 232, 236 (1944)); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  The federal
court must follow the most recent decisions of the state's highest court.  *Wade v. EMCASCO Ins. Co.*,
483 F.3d 657, 666 (10th Cir. 2007).

The Contract does not contain a choice of law provision.  In the absence of a choice of law
provision, New Mexico choice of law rules generally provide that contracts are interpreted according
to the law of the place where the final act necessary to the formation of the contract occurred, also
known as the lex loci contractus rule.  *See Ferrell v. Allstate Ins. Co.*, 144 N.M. 405, 421, 188 P.3d
1156, 1172 (2008); *State Farm Mut. Auto. Ins. Co. v. Ballard*, 132 N.M. 696, 698, 54 P.3d 537, 539
(2002); *State Farm Mut. Ins. Co. v. Conyers*, 109 N.M. 243, 247, 784 P.2d 986, 990 (1989).  New
Mexico law provides that the last act necessary for an agreement's formation is accomplished when
a party to a contract places the last signature on the contract.  *Conyers*, 109 N.M. at 247, 784 P.2d at
990.  In this case, the last signature was affixed by Mr. Pattelena in New Mexico on November 8,
2007.  Therefore, New Mexico substantive law applies to the interpretation of the Contract.

**B.      Plaintiffs are bound by the terms of the Contract.**

Generally, New Mexico law holds that parties are bound to the terms of their express, written
contracts and are not excused from their duty to know these terms.  *Ballard v. Chavez*, 117 N.M. 1,
3, 868 P.2d 646, 648 (1994).  "Each party to a contract has a duty to read and familiarize himself with
the contents of the contract, each party generally is presumed to know the terms of the agreement, and
each is ordinarily bound thereby."  *Ballard v. Chavez*, 117 N.M. at 3, 868 P.2d at 648 (citation
omitted).  Plaintiffs have presented neither facts nor legal argument that would excuse them from this
general rule.

In an effort to avoid the plain meaning of the Contract, Plaintiffs assert that the Contract is unconscionable. "Unconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." *Cordova v. World Fin. Corp. of N.M.*, 146 N.M. 256, 262, 208 P.3d 901, 907 (2009) (citation omitted). The doctrine consists of two components, a substantive component and a procedural component. *Id.*

Substantive unconscionabilty deals "with contract terms that are illegal, contrary to public policy, or grossly unfair." *Cordova*, 146 N.M. at 262, 208 P.3d at 907. The New Mexico Supreme Court has adopted a non-exclusive list of six factors to determine whether public policy should operate to void a contractual limitation of liability. *Berlangieri v. Running Elk Corp.*, 134 N.M. 341, 352, 76 P.3d 1098, 1109 (2003).

The six factors are: (1) whether the seller's business is of a type generally thought suitable for public regulation; (2) whether the seller's business involves a service of great importance to the public; (3) whether the seller holds itself out as willing to perform the service for any member of the public; (4) whether the seller possesses a decisive advantage of bargaining strength against the public; (5) the seller confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence; and (6) as a result of the transaction, the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or its agents. *Berlangieri*, 134 N.M. at 352-3, 76 P.3d at 1109-10. Of all of these factors, only (3) and (6) would arguably apply herein. None of the factors suggest that enforcement of the Contract would be unjust. Where, as here, a contract does not violate public policy, a party seeking to establish substantive unconscionability must show that the provision was "grossly unfair under the circumstances as they existed at the time the contract was formed." *Id.*

Plaintiffs assert that the Contract contains substantively unconscionable exculpatory clauses that deprive them of a remedy.  New Mexico law recognizes the "significant difference between contracts that insulate a party from any and all liability and those that simply limit liability."  *Fort Knox Self Storage, Inc. v. W. Tech., Inc.*, 140 N.M. 233, 237, 142 P.3d 1, 5 (Ct. App. 2006) (citation omitted) (discussing the distinctions between exculpatory clauses, indemnity clauses, and limitation of liability clauses).  While an exculpatory clause immunizes a party from liability, a limitation of liability clause merely curtails liability.  *Fort Knox Self Storage*, 140 N.M. at 237-38, 142 P.3d at 5-6.  A limitation of liability clause is neither contrary to public policy nor unfair because the party "still bears substantial responsibility for its actions."  *Fort Knox Self Storage*, 140 N.M. at 237-38, 142 P.3d at 5-6.

In this case, the plain terms of the Contract demonstrate that it does not exculpate Defendants from all liability.  On the contrary, Defendants remained subject to suit for one year, a significant period that would allow a buyer to realize whether there were problems with the home.  There is nothing unfair about this arrangement.  The New Mexico Supreme Court has endorsed three-year and two- year time-to-sue provisions in cases involving state investments and municipal repair projects.  *State ex rel. Udall v. Colonial Penn Ins. Co.*, 112 N.M. 123, 126, 812 P.2d 777, 780 (1991) (upholding three-year provision in state contract with investment advisor); *City of Santa Fe v. Travelers Cas. & Sur. Co.*, ____ N.M. ____, ___ P.3d ___, 2010 WL 936103, *3 (Feb. 16, 2010) (stating parties may contract directly to shorter time-to-sue provision in discussing two-year provision relating to water tank repair project).  Based on New Mexico law, the one-year time-to-sue provision in the Contract is not substantively unconscionable.

The limitation of liability to $724.63, the fee paid for the inspection and report, is more troubling.  The New Mexico Court of Appeals has approved a contract that limited liability to twenty-

10

eight times the amount of the contract, and favorably discussed a case that approved a contract that limited liability to seven times the amount of the contract. *See Fort Knox Self Storage*, 140 N.M. at 237-238, 142 P.3d at 5-6. At the same time, Plaintiffs have not shown that the terms of the Contract are so grossly unfair as to constitute substantive unconscionabillity. *See Cordova*, 146 N.M. at 264, 208 P.3d at 909 (stating that party seeking relief from contract as unconscionable must show "provision is grossly unreasonable and against [New Mexico] public policy under the circumstances.").

Procedural unconscionability concerns lack of alternatives "and is determined by examining the circumstances surrounding the contract formation, including the particular party's ability to understand the terms of the contract and the relative bargaining power of the parties." *Cordova*, 146 N.M. at 262, 208 P.3d at 907. A contract may be procedurally unconscionable only where the inequality between the parties is so pronounced that the party invoking the doctrine virtually lacks any choice. *Id.* "Factors to be considered include the use of sharp practices or high pressure tactics and the relative education, sophistication, or wealth of the parties, as well as the relative scarcity of the subject matter of the contract." *Id.*

In this case, there is no evidence of high pressure tactics. Plaintiffs were located in another state and the Contract was sent to them by email. The evidence neither indicates that Plaintiffs were rushed in their review of the two-page Contract nor pressured into signing it. On the contrary, the email invited Plaintiffs to ask questions about the Contract. There is no indication that Plaintiffs attempted to negotiate any of the provisions of the Contract prior to signing it and faxing it back to Mr. Pattelena.

Plaintiffs have made no showing of an unequal balance of bargaining power. While the record indicates that Mr. Pattelena may have had a degree from Cornell, a person of ordinary intelligence

would not need a degree from Cornell, or anywhere else, to understand the simple and straightforward language of the Contract.

Plaintiffs could have hired a different home inspector if they were unsatisfied with the Contract. They do not argue that home inspectors are in short supply in the Santa Fe area. Indeed, Plaintiffs' expert witness is a Santa Fe home inspector. (Pl. Ex. 5.) The Court takes judicial notice that an internet yellow page search shows twenty-four home inspectors in Santa Fe. *See* http://www.dexknows.com/local/real_estate/real_estate_services/property_inspection/geo/c-santa_ fe-nm/att/residential/. As there is no scarcity of home inspectors in Santa Fe, Plaintiffs could have easily taken their business elsewhere had they been concerned about the clear language of the Contract. Any inequality in the relative bargaining power of the parties was not so pronounced so as to constitute procedural unconscionability. *See Cordova*, 146 N.M. at 262, 208 P.3d at 907.

Plaintiffs have presented no evidence of procedural unconscionabillity. While the term of the Contract that limits liability to $724.63 heavily favors the PIE Defendants, the Contract is not so grossly unfair so as to constitute substantive unconscionability. The record, considered in the aggregate and construed in the light most favorable to Plaintiffs, contains no evidence that would render the Contract unenforceable or would excuse Plaintiffs from the general rule that parties are bound to the terms of their Contract.

**C.     The Contract imposed a one-year time limit for filing claims that expired six months before Plaintiffs filed suit.**

The New Mexico Supreme Court has "consistently . . . held that contractual limitations on actions, including time-to-sue provisions, will be enforced unless they violate public policy." *See State ex rel. Udall v. Colonial Penn Ins. Co.*, 112 N.M. at 126, 812 P.2d at 780. The rationale is that a "party who executes and enters into a written contract with another is presumed to know the terms

of the agreement, and to have agreed to each of its provisions [.]" *Id.* (internal quotation marks and citation omitted). "Under such circumstances, the important public policy of freedom of contract mandated enforcement of the bargained-for time-to-sue provision." *City of Santa Fe v. Travelers Cas. & Sur. Co.*, ____ N.M. at ____, ____P.3d at ___, 2010 WL 936103 *3.

In this case, the Contract clearly states "[a]ny claim by client against PIE shall be instituted within one year from the date of the inspection or be forever barred." (Def. Ex. A.)  The rationale underlying principles of freedom of contract supports the conclusion that Plaintiffs are bound by this term.  Plaintiffs have pointed to no rule or public policy that would allow the rewriting of their Contract.  The one-year period expired on November 8, 2008.  Plaintiffs filed suit on May 14, 2009, which is more than six months after the one-year period expired.  This suit was therefore untimely. Construed in the light most favorable to Plaintiffs, the record contains no evidence that would support a contrary result.  In that the negligence claim against the PIE Defendants was instituted more than one year after the date of inspection, it is barred by the plain terms of the Contract.

> **D.      The Court does not reach the question of whether the Contract limited the PIE Defendants' liability to a refund of the fee paid for the inspection and report.**

The Contract limits liability for "errors or omissions in the inspection report" to a refund of the fee paid.  Plaintiffs contend that this language did not limit the PIE Defendants' liability for negligence. The New Mexico Supreme Court has held that "agreements that exculpate one party from liability for negligence will be enforced, unless they are violative of law or contrary to some rule of public policy." *Berlangieri*, 134 N.M at, 347, 76 P.3d at 1104 (internal quotation omitted).  In reaching this conclusion, the New Mexico Supreme Court discussed the underlying policy considerations and reaffirmed that "New Mexico has a strong public policy of freedom to contact that requires enforcement of contracts unless they clearly contravene some law or rule of public morals."

*Id.*, 134 N.M. at 347, 76 P.3d at 1104 (internal quotation omitted.)  Here, the limitation of liability clause effectively limits the liability of the PIE Defendants to $724.63, which was the amount of the Contract.

The New Mexico Court of Appeals has determined that a contractual clause capping an engineering firm's liability at twenty-eight times the amount of the contract was valid and enforceable. *Knox Self Storage*, 140 N.M. at 8, 142 P.2d at 240.  The Court recognizes that the limitation of liability in this case is substantially less than the limitation of liability endorsed in *Fort Knox* and, as a consequence, gave the PIE Defendants little incentive to avoid negligence.  In the absence of the one-year limitation on the time to sue, the $724.63 limitation of liability may well have been violative of public policy.  However, the Court does not reach this question in light of the one-year time-to-sue provision.

## V.     Conclusion.

New Mexico law applies to interpretation of the Contract, which is neither unconscionable nor otherwise unenforceable.  The one-year time-to-sue provision applies and bars this action.  The Court does not reach the issue of whether the liability of the PIE Defendants would be limited to $724.63.

**THEREFORE,**

**IT IS ORDERED** that Defendants Professional Inspections and Evaluations, Inc. and Steve Pattelena's Motion for Summary Judgment (Doc. 89), filed on January 25, 2010, is **GRANTED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**